This land out for the appellant and reorganized debtor.360. Good afternoon, your honors, and may it please the court. I request two minutes, actually, for the reply, if I may, and I've got my timer started. You got it. Your honors, in this appeal,.360 requests that the court reverse the underlying decisions of the district court and the bankruptcy court, which denied in full.360's motion for $524,000 in change in attorney's fees and $15,350 in costs related to.360's successful confirmation of its Chapter 11 plan on June 11, 2019. I don't think there's any doubt that in the plan proceedings,.360 was a prevailing party when it confirmed its plan over Medley's objection. As the court knows from the briefing, the finding of each of the courts below is that the debtor's bankruptcy plan confirmation litigation was not, and I characterize it as sufficiently an action on a contract to trigger application of California Civil Code Section 1717. The district court found that the relevant underlying action did not focus on the enforceability of the agreement, the words being focus on, and the bankruptcy court found that issues unrelated to the contract predominated. So, your honors, the courts below erred, and we request reversal of that decision and remand for a review of the matter. The error, I believe, is seen most clearly in the courts denying the first fee request that we made, which was for approximately $16,000 in fees and costs, that .360 incurred in prevailing in a declaratory relief adversary proceeding that was a predicate to plan confirmation. That action was indisputably an action to interpret and enforce Medley's contract. Mr. Counsel, Judge Tolman here. It seems to me, though, that what you were really litigating over was a question of remedies. If there had been a breach of contract, would you have been able to reach the assets that were securing the loan that your client made? There was no challenge to whether or not the contract was enforceable. The only question was whether or not, if there was a breach, your client would be able to reach the assets that secured the loan. Why is that not collateral as opposed to being an action? The first action, your honor, was to interpret the loan document, which contained a provision that we believe allowed .360 to sell parts of Medley's collateral and use the proceeds to pay other creditors. That interpretive action, an action to interpret the contract, is within the scope of the attorney's fees clause. I'm not sure that requires interpretation of the enforceability of the contract. It requires an interpretation of, if there's a breach of the contract, what will the lender be allowed to seize to effectuate the judgment? To me, that's a separate question from suing to enforce the contract itself. I would submit, your honor, that the ability to actually use the collateral over Medley's objection to not being able to use the collateral went to the heart of the scope of the security interest. As I understand it, there were three separate legal documents, were there not? Yes, there were. They were integrated, yes. Okay, and one of them was, in essence, the instrument which secured the collateral in favor of the lender in the event of a breach. Yes. Okay, and so the bankruptcy court needed to determine, before it could confirm the plan, whether or not the debtor could alienate or otherwise sign those assets, notwithstanding the fact that he'd entered into this collateral agreement. Essentially, yes. One of the agreements authorized .360 to use that collateral without paying Medley, to sell the technical equipment without paying the proceeds to Medley. Medley said, no, you can't do it. Could you help me look at the right document? I'm looking at the security agreement, and it's hard for me to find exactly what was at issue. Just point. So it's actually in the, it's not the term loan agreement, it's the purchase and sale agreement, which was one of the three. Oh, I thought it would be the purchase and sale paragraph within the security agreement. It's actually on appendix page 183. Okay, that's what I'm looking at. I actually think it's 184, so it's the second page of the sale agreement, and it's within that large paragraph. It's called sale agreement, but it looks to me like it's more of a security agreement. It says this is entered into pursuant to Article 9 of the UCC, which is security interests and personal property. It looks like just a normal security agreement that you would have together with a loan. Well, not to make this case sound like, start to sound like the last case with the complexity, but there was an earlier Article 9 sale that resulted in 0.360 getting the assets that it had. So this is the sale agreement from the first debtor to Medley that sold its assets to 0.360. And so that's why it's called the sale agreement, sale agreement of Article 9. There was two agreements that go with this sale agreement once the assets landed in the hands of 0.360 that created a secured party relationship with Medley with 0.360. The question Your Honor is asking about the release of the collateral, that's on page 184 of the appendix. Okay, I got it. About 10 lines down in paragraph 1.1, it says, following the closing, and I'll wait for Your Honor to find those words, following the closing. Five, six, seven, eight. Okay, I got it. Okay, so was that the heart of what was in the declaratory judgment proceeding or summary judgment proceeding? Yeah, absolutely. That's exactly what it was about. And so I had to do that first. I went into an adversary proceeding to declare that the debtor had the right to use the proceeds. And then that folded into the plan confirmation, which was next, in which those proceeds were used to fund the plan. And so, to me, the clear error of the two, the clear error is that this adversary proceeding was clearly an action on the contract to declare the rights under that contract, which comes within the attorney fee provision of the agreement. Now, I've got another question about that. I can see where the summary judgment proceeding was about nothing but interpreting that sentence on AA184. But it doesn't look like that's the whole half million. It looks like that's $16,000. Did you already get the $16,000? What's the status of that? Never got it. When I went in for it after the adversary proceeding was concluded in my client's favor, the court held that it was premature to ask for the fees at that time because the AP adversary proceeding was just a component of the plan. So then I asked for it again. Okay, so confirmation always involves a lot of other stuff. And I have trouble seeing why – I have no trouble understanding your argument that the litigation over this sentence in the – I called it the security agreement, and it's denoted in the title sale agreement pursuant to Article 9 of the Uniform Commercial Code. It was – I can see where that proceeding, the summary judgment proceeding, was about nothing but how to interpret this agreement and .361 on the interpretation of the agreement. So it could sell those assets instead of having them – I may get mixed up if I try to phrase this, but .361 on that. But then the confirmation of any plan involves a whole lot of other considerations, and I can't see where the rest of the confirmation proceedings would have anything to do with the contract. That's all – that's just one piece of it. And that's consistent with what the court found below is that the issues – the non-contract issues predominated. But, Your Honor, my focus is on the court's Penrod decision. Penrod – Before we get to Penrod, I understand the strength of your argument on Penrod versus Foss, that Penrod – this is a lot more like Penrod. What I want to know right now is, was it your burden to say we're only looking for the $16,000 for the proceeding on interpreting the contract, or was it the other side's burden to urge the court not to give you the whole half million, just the $16,000, because only $16,000 was about the contract dispute? So I asked for all of it, and I cited the California law that said that when you cannot allocate out the fees, that it's impractical to allocate out the fees between – Why would it be impractical? It seems like it's a cinch. I mean, you just look at the hours and expenses relating to that summary judgment proceeding. Well, certainly on the adversary proceeding, that's absolutely true. That was easy. That had already been isolated from the first time I asked for it. The harder part is when we have the mix of contract and non-contract issues at confirmation. For example, a confirmation trust lasted days. Okay, so you say it's impossible to allocate. Now, whose burden is it to say, no, it is possible. They should – .360 should get $16,000, or .360 – or it's not possible to allocate. So .360 should get the whole half million. Is it your burden to suggest allocation, if possible, or else to prove it's not possible? Or is it the Medli Capital Corporation's burden to say, we shouldn't have to pay anything, but if we do have to pay, it should just be the $16,000? I believe it's Medli's burden in the rebuttal to say that you can allocate. They went all the way to the other side of the equation to say don't give them anything at all. But my analogy in my arguments below and in this court is that the analogy is to tort and contract claims in California courts. You can get fees for contract claims. You can't get them for tort. Usually, there's tort and contract in the same lawsuit at the same time. And so what the courts find is that if the fees cannot, as a practical matter, be separated, that they're all allowed because the action arose partly under the contract. And so that's the analogy I would bring forth here. And I would submit that that fits under Penrod because Penrod, although it was Chapter 13 and not as complicated as this Chapter 11, there was a whole lot of other issues going on in Penrod aside from the bank's assertion of its contract rights. And so – I'm sorry. I was going to say, why don't you finish up that point and we'll go ahead and give you two minutes for rebuttal. But I do want to hear from Ms. Coberly. Go ahead and finish up your point. Again, I'll stop at that point, Your Honor. I've gone over and I'll hold for my rebuttal time. We'll give you two minutes when it's your turn again. We had a lot of questions for you. Ms. Coberly, you have the floor. You may proceed. Thank you, Your Honor. Good afternoon, and may it be the court. I'm Linda Coberly, and I represent MADLI, the appellee here. The argument I just heard from counsel is that the error here was in failure to apportion. And there was a discussion about whose burden that would be. I don't think you get to that before you first decide whether this falls within that California reciprocity statute, because it's an action on a contract. The way it looks to me is like the summary judgment proceeding to determine whether the security agreement or the sale agreement under Article 9 of the UCC, it looks like that's just nothing but contract. It's a determination of whether that sentence on page 184 gives the right to sell the assets to .360 or not. And that's all. And that's an even stronger case for treating it as a contract claim than Penrod was. It's simpler and more straightforwardly only contract. The rest of confirmation looks like it isn't. And what I'm wondering is, here's what's on my mind. I'm thinking you've got one piece of this that's straight, simple contract, and that is the interpretation of the sale agreement. And it sounds like there's around 16,000 of attorney's fees involved in .360 winning on that. Then you've got a confirmation proceeding that's about all kinds of other things, all the equities and bankruptcy and the special issues in bankruptcy law. And it's not predominantly contract. It seems to me that it would be the appellee's burden, medley's burden, to say, well, we don't think anything's on contract, but that's a loser. I don't think your argument on boss is very strong, frankly, because it's more like Penrod. However, I would think that you would be entitled to say it's easy to allocate. You just look at attorney's fees, look at the hours spent. It's a pretty straightforward lodestar issue. They've got about, they've already said they have about 16,000 in the contract issue. So they get 16. They don't get a half million. What am I missing? Your Honor, if I could take a step back. There was a petition for the adversary proceeding. It was denied because it was too soon to tell whether the debtor was a prevailing party. They did prevail on the contract issue, but whether that was going to help them to prevail on something else hasn't been decided yet. So they abandoned that petition. The debtor didn't pursue it, didn't put the denial, didn't renew it. Instead, what the debtor did, wait until the end of the confirmation, and then take the position that the entire proceeding wasn't actually on the contract. I don't see what's the matter with waiting until the end. I mean, if they pursued it and the judge said too soon to say, wait until the end, and they wait until the end, what's the matter with that? I can't see where they forfeited. I'm not saying that they forfeited it. I'm saying that they didn't renew the $16,000 ticket at the end. What they did instead was seek fees for the entire confirmation proceeding and took the position that the entire confirmation proceeding was an action on the contract. And, in fact, at every stage, the debtor refused to say that a portion was even allowed. In the bankruptcy court, the debtor's not willing to say. Why wouldn't that be Medley's burden? I mean, the judge said too soon to say. We haven't determined who wins. And then when the case really is completed and the confirmation has been accomplished, now it's not too soon to say anymore. And they say, okay, it was too soon to say before. Now we can say we want the whole half million. Why isn't it Medley's burden to say, no, only $16,000 was on the contract, and all they should get is $16,000. Why shouldn't Medley have the burden of urging allocation? Medley has the burden of responding to the motion that's been made. The motion that was made was based on the argument, and only one argument. The only argument that was made at the bankruptcy court and in the opening brief in the district court was that the entire confirmation proceeding was an action on a contract. We responded to that argument by saying that's wrong. The entire confirmation proceeding was not an action on a contract. It included all kinds of other stuff to which the contract was only collateral. It included issues that arise under the bankruptcy code and by the U.S. trustee and all of these things. So the only argument, it was the debtor that was paying the fees. They were the movement in the bankruptcy court. And the motion they filed sought one thing, which is an award of all the fees for the entire confirmation proceeding on the theory that the entire confirmation proceeding was an action on a contract. We responded to that argument, and we said that's not right. The entire confirmation proceeding is not an action on a contract, or it's agreed with. To the district. Well, it looks to me as though you're pretty solid on the entire confirmation proceeding, not being about the contract, but you've got a pretty plain loser if you urge that none of the confirmation was about the contract. The argument we're making in this court is that they waived that. There was any effort to get apportionments, any effort to say, I will say that the debtor has never argued in this case that it was Medley's obligation and burden to raise apportionment. That is an argument the debtor has never made in this case. In fact, the debtor said in the bankruptcy court, in the district court, and in its opening. Why did they waive it? They asked for $16,000. The judge said too soon to say. And then they asked for the half million, but they never said we don't want the $16,000. But what they said was, they moved for relief. And the relief they sought required a finding that the entire confirmation proceeding was an action on the contract. And that was the theory that was litigated in the bankruptcy court in the district. The theory that we're discussing now, which is, did Medley have a burden? Was the fee award for the adversary proceeding something that was out of contract? None of that was litigated. The issue of whether the adversary alone was an action out of contract was not litigated. And in fact, it wasn't until the reply brief in the district court appeal that the debtor even raised the issue of suggesting that the bankruptcy court should have it. That issue was not even raised until the reply brief. And you can find that at page 375 of the supplemental action contract. So this argument that we're hearing now, which is that the adversary was an action out of contract and it was Medley's burden to distill out which fees were which, that's, first of all, I'm not aware of any authority that supports that. I don't know how Medley could carry its burden of establishing what fees were. That's information that was solely in the hands of the debtor. But even if there was an obligation by the bankruptcy court to fight for all of them, that was not the position that the debtor was in. The position the debtor was taking was all or nothing. And the courts below said nothing. And that's because the entire confirmation proceeding cannot be deemed an action. Now, if you had at that time said, in the alternative, we'd like to do this, it would have a different position. But they didn't do that. They put all their eggs in the one basket, simply asking for half a million dollars before going any other argument. As the movement, they had the burden at least to say what was at issue. And so did you. It seems like the appellant said all or nothing and the defendant said, or the appellee said all or nothing. And the appellant here, the debtor, is the one that is seeking relief from the court. So if anyone had an obligation here to say what they were asking for, to make all the arguments, and to propose an apportionment of the fees, it was the party seeking relief from the court, not my client. Thank you. Anything further? You still have a little bit of time to cover anything further? Well, Your Honor, the courts below have never had the opportunity to evaluate whether the debtor even preserved its ability to seek the lower amount. The $16,000 petition was not appealed. It was never pursued. It was never mentioned again, as far as I know. So if any relief were to be granted in this case, it would need to be preceded by a remand to figure out whether that's the case. We submitted not. How could they appeal it? You say it was never appealed, suggesting it was waived. But how could they appeal it? It wasn't a final judgment. The judge said it's too soon to say. The judge denied their motion. The judge denied their motion. You can't appeal a denial of a motion. You can't appeal a denial. Counsel, you can't appeal a denial of a motion. Ordinarily, there are exceptions, but generally you can't. You can only appeal from a final judgment. So why are you saying they never appealed the decision on the $16,000? I don't understand. Even today, even today, the decision on the $16,000 is not before this court. What's before this court is a petition for a half a million dollars in fees that was filed and supported by the argument that the entire confirmation proceeding was an action on a contract. At no point in the bankruptcy did the parties come together and say, in the alternative, we should get less. So what you're saying is that in this appeal, they're not appealing the judge's decision that it was too soon to determine whether they were the prevailing party and entitled to the $16,000. Correct. Correct. That has not been briefed. It's not been argued. That's not part of this appeal. The only thing that's part of this appeal. Maybe it could be too soon, and the judge could be correct that it was too soon because it had to wait until the confirmation was done before any final judgment would issue. But I don't see why they'd have to appeal that in order to appeal whether they should get $16,000. Your Honor, they could have, at the end of the confirmation proceeding, they could have filed a motion for $16,000 in fees. And we would have, frankly, we would probably have just paid, and that would have been the end of it. But, instead, what they did is they insisted on more than half a million in fees, a lot of which, by the way, wasn't even attorney's fees. It was actually a consultant's fees relating to the consultant on the plan. Their argument in support of that relief was that the entire confirmation proceeding was an action on a contract. We disagreed, prevailed in our argument, and that is the issue that has been argued on appeal. And they took the position that it couldn't be apportioned. And they took the position that it couldn't be apportioned, both in the trial court, in the bankruptcy court, and in their opening plea by the district court. It wasn't until the reply on appeal that they raised the issue that the bankruptcy court shouldn't have just denied it. The bankruptcy court should at least have tried to apportion it. So that issue is not preserved for a decision by the district court. All right. Thank you, Ms. Coberlein. We'll go ahead and hear from Mr. Landau again. Mr. Landau, you have two minutes. Thank you, Your Honor. I would just start by directing the court's attention to appendix page 67, which is the third or fourth page of my motion for attorney's fees. There's four points stated there as far as what we were asking for. Point four states resubmission of only the debtor's fees of $15,493 and the cost because they were denied as premature for the declaratory relief action. So that was always broken out. In fact, I resubmitted my same motion with a request for judicial notice to the court when we were seeking the fees. I don't dispute the court denying the motion without prejudice the first time around as premature and waiting to see what happened on confirmation. But, counsel, didn't you take the position that it was impracticable to apportion? It was impractical to apportion the confirmation fees, yes. It's the confirmation fees. Why are you not now judicially stopped from changing your position? Your Honor, I don't think it's a change of position. The argument has always been that the confirmation fees where we were doing a confirmation trial of all the issues at once with the discovery happening all at once and the confirmation proceeding under 1129 all at once was impractical to allocate. But that's the all or nothing position, counsel. You asked for the whole $500,000. You never said to the court, well, if you're not going to give me $500,000, I'll take $16,000 because that's what I spent on the first. You didn't say that. That's kind of self-defeating to go in with that proposal, Your Honor. I think that what we asked for is litigation. But you just acknowledged that you never made the argument. That's the point. Well, I didn't, Your Honor. You never sought that relief. I resubmitted the first fee motion which broke out the amount for the adversary proceeding after I prevailed at confirmation and I asked for the additional fees related to confirmation. It shows it very clearly on page 67 of the motion. I don't know how I could break it out any more than that. But that's... Does your appeal to this court, I can't remember for sure what the brief said about this. I don't recall it saying we asked the district court to give us the $16,000 if it determined that we weren't entitled to the $500,000 and we're asking you to reverse the district court's decision not to give us the $16,000 if we weren't entitled to the $500,000. Ordinarily, you can't get a district court reversed for not doing something you never asked it to do. And you can't get the Court of Appeals to reverse on a particular thing if you don't ask them to. Your Honor, I have used the adversary proceeding fee denial as the highlighted example of the ultimate error in the decision below which said that nothing was on a contract. I mean, that's the first step of the problem. The court said, no, you don't get fees, 0.360, because this was not predominantly an action on the contract. Allocation is the second step. I don't get to that unless I have an action on a contract. And so, I believe I've raised throughout this issue of disclaratory relief fees. Before I lose my time, because time is extremely short on this reply, I just want to point out also to Your Honors, on appendix page 452, which is Medley's objection to the plan, where Medley is effectively answering the plan saying, here's our position why you can't confirm this plan. And Medley's position, isolated on page 452 at lines 20 to 22, says that the debtor must pay Medley no less than $3.66 million on the plan effective date to confirm. That was their position, and I had to fight through that to confirm this plan to show that I did not need to pay them $3.66 million to confirm. And ultimately, 0.360 did, and we confirmed. Your Honor, that puts this case on all fours with Penrod. Medley was here saying, you cannot confirm this plan because of our contract rights. I had to overcome those contract rights to confirm. That lines this up on all fours with Penrod. And I believe that the ultimate finding that this action, whether it be the adversary proceeding or confirmation was an action on the contract, is the first step that leads to a reversal. And with that, Your Honor. All right, thank you. Thank you very much, Counsel. And thank you. Thank you, Counsel, for your argument. Thank you, Ms. Coberly, as well. I appreciate your argument and briefing in this case. This matter is submitted. And we'll go ahead and call the final case for today, 20-55323, Khalil v. Cisna.
judges: Kleinfeld, Tallman, Owens